# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| STEPHANIE A. ZENDEJAS, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. |
| | § | |
| MICHAEL J. ASTRUE, | § | SA-08-CV-0633 XR (NN) |
| **Commissioner of the Social** | § | |
| **Security Administration,** | § | |
| | § | |
| Defendant. | § | |

# REPORT AND RECOMMENDATION
# OF THE UNITED STATES MAGISTRATE JUDGE

**TO:** Honorable Xavier Rodriguez
United States District Judge

## Introduction

Plaintiff Stephanie A. Zendejas brought this action for judicial review of the final decision of the Commissioner of the Social Security Administration (the Commissioner), determining that Zendejas is not disabled for the purposes of the Social Security Act (the Act) and denying Zendejas's application for Supplemental Security Insurance (SSI) benefits. Zendejas asks the district court to reverse the Commissioner's decision and to render judgment in her favor. In the alternative, Zendejas asks the district court to reverse the decision and remand the case for further proceedings.

After considering Zendejas's brief in support of her complaint,[1] the brief in support of the

---

[1] Docket entry # 17.

Commissioner's decision,² the record of the SSA proceedings, the pleadings on file, the applicable case authority and relevant statutory and regulatory provisions, and the entire record in this matter, I recommend affirming the Commissioner's decision.

I have jurisdiction to enter this report and recommendation under 28 U.S.C. § 636(b) and this district's general order, dated July 17, 1981, referring for disposition by recommendation all cases where a plaintiff seeks review of the Commissioner's denial of the plaintiff's application for benefits.³

## Jurisdiction

The district court has jurisdiction to review the Commissioner's final decision as provided by 42 U.S.C. §§ 405(g), 1383(c)(3).

## Administrative Proceedings

Based on the record in this case, Zendejas exhausted her administrative remedies prior to filing this action in federal court. Zendejas applied for SSI benefits on May 29, 2005, alleging disability beginning on May 27, 2005.⁴ Zendejas's insured status for Disability Insurance Benefits expired on her alleged onset date.⁵ The Commissioner denied the applications initially and on reconsideration.⁶ Zendejas then asked for a hearing before an ALJ.⁷ An ALJ held a

---

²Docket entry # 19.

³*See* Local Rules for the Western District of Texas, appx. C, p. 10.

⁴SSA record, p. 54.

⁵*Id.* at p. 48.

⁶*Id.* at pp. 26 & 39.

⁷*Id.* at p. 38.

hearing on August 30, 2007.[8] The ALJ issued a decision on October 25, 2007, concluding that Zendejas is not disabled within the meaning of the Act.[9] Zendejas asked the Appeals Council to review the decision, but the Appeals Council declined to review the decision on June 6, 2008, determining no reason existed for reviewing the decision.[10] The ALJ's decision became the final decision of the Commissioner for the purpose of the district court's review pursuant to 42 U.S.C. § 405(g). Zendejas filed this action seeking review of the Commissioner's decision on August 18, 2008.[11]

### Issue Presented

> Is the ALJ's decision that Zendejas is not under a "disability," as defined by the Act, supported by substantial evidence and does the decision comport with relevant legal standards?

### Analysis

**A. Standard of Review**

In reviewing the Commissioner's decision denying disability benefits, the reviewing court is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards in evaluating the evidence.[12] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a

---

[8] *Id*. at pp. 713-31.

[9] *Id*. at pp. 6-18.

[10] *Id*. at p. 2.

[11] Docket entry # 3.

[12] *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).

reasonable mind might accept as adequate to support a conclusion."[13] Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[14]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[15] In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from reweighing the evidence or substituting its judgment for that of the Commissioner.[16] Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve.[17] Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[18]

**1. Entitlement to Benefits**

---

[13]*Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

[14]*Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).

[15]*Martinez*, 64 F.3d at 173.

[16]*Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *see also Villa*, 895 F.2d at 1021 (The court is not to reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.).

[17]*Martinez*, 64 F.3d at 174.

[18]*Id*.

Every individual who meets certain income and resource requirements, has filed an application for benefits, and is under a disability, is eligible to receive benefits.[19] The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[20] A claimant shall be determined to be disabled only if her physical or mental impairment or impairments are so severe that she is unable to not only do her previous work, but cannot, considering her age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if she applied for work.[21]

**2. Evaluation Process and Burden of Proof**

The Commissioner's regulations provide that disability claims are to be evaluated according to a five-step process.[22] A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis.[23]

The first step involves determining whether the claimant is currently engaged in

---

[19] 42 U.S.C. § 1382(a)(1) & (2).

[20] 42 U.S.C. § 1382c(a)(3)(A).

[21] 42 U.S.C. § 1382c(a)(3)(B).

[22] 20 C.F.R. §§ 404.1520 and 416.920.

[23] *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

substantial gainful activity.[24]  If so, the claimant will be found not disabled regardless of her medical condition or her age, education, or work experience.[25]  The second step involves determining whether the claimant's impairment is severe.[26]  If it is not severe, the claimant is deemed not disabled.[27]  In the third step, the Commissioner compares the severe impairment with those on a list of specific impairments.[28]  If it meets or equals a listed impairment, the claimant is deemed disabled without considering her age, education, or work experience.[29]  If the impairment is not on the list, the Commissioner, in the fourth step, reviews the claimant's residual functional capacity and the demands of her past work.[30]  If the claimant is still able to do her past work, the claimant is not disabled.[31]  If the claimant cannot perform her past work, the Commissioner moves to the fifth and final step of evaluating the claimant's ability, given her residual capacities, age, education, and work experience, to do other work.[32]  If the claimant cannot do other work, she will be found disabled.  The claimant bears the burden of proof at the first four steps of the

---

[24] 20 C.F.R. §§ 404.1520 and 416.920.

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *Id.*

sequential analysis.[33] Once the claimant has shown that she is unable to perform her previous work, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is not only physically able to perform, but also, taking into account her exertional and nonexertional limitations, able to maintain for a significant period of time.[34] If the Commissioner adequately points to potential alternative employment, the burden shifts back to the claimant to prove that she is unable to perform the alternative work.[35]

**B. Findings and Conclusions of the ALJ**

In the instant case, the ALJ reached his decision at step four of the evaluation process. At step one, the ALJ determined that Zendejas had done no substantial gainful work since her alleged on-set date.[36] At step two, the ALJ determined that Zendejas has the following severe impairments: sacroiliitis, obesity, myofascial pain, restless leg syndrome, obstructive sleep apnea, anxiety disorder NOS, depressive disorder NOS, and dependent personality disorder NOS.[37] At step three, the ALJ determined that these impairments do not meet or medically equal an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1 (Appendix 1).[38] At step four, the ALJ determined that Zendejas can perform a wide range of sedentary work with the

---

[33]*Leggett*, 67 F.3d at 564.

[34]*Watson v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002).

[35]*Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

[36]SSA record, p. 11.

[37]*Id*.

[38]*Id*. at p. 16.

additional limitation of occasional interaction with others,[39] to include her previous relevant work as a clerk typist.[40] Having determined that Zendejas can perform her past work as a clerk typist, the ALJ concluded that Zendejas is not disabled as defined by the Act at any time from the alleged on-set date through the date of the ALJ's decision.[41]

## C. Zendejas's Allegations of Error

**Whether the case should be remanded for consideration of new evidence**. Zenejas first asks the district court to remand this case for consideration of the new evidence attached to her brief. Zenejas's new evidence consists of treatment notes from Social Worker Leslie A. Warren and Dr. Gary Wilson, and the results of a mental examination by Dr. Lewis Richmond.

> When new evidence becomes available after the [Commissioner's] decision and there is a reasonable probability that the new evidence would change the outcome of the decision, a remand is appropriate so that this new evidence can be considered. To justify a remand, 42 U.S.C. § 405(g) requires that the evidence is "new" and "material" as well as a showing of "good cause" for failing to provide this evidence at the original proceedings. . . . Reviewing the materiality of new evidence requires . . . two separate inquiries: (1) whether the evidence relates to the time period for which the disability benefits were denied, and (2) whether there is a reasonable probability that this new evidence would change the outcome of the [Commissioner's] decision.[42]

Zendejas's new evidence is not material because it does not relate to the time period for which benefits were denied. The ALJ concluded that Zendejas was not under a disability at any time since Zendejas's alleged onset date. Because Zendejas alleged an onset date of May 27, 2005,

---

[39]*Id*. at p. 12.

[40]*Id*. at p. 17.

[41]*Id*. at p. 18.

[42]*Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).

8

and the decision denying Zendejas's application is dated October 27, 2007, the "time period for which benefits were denied" is May 27, 2005 to October 25, 2007. The treatment and evaluation recorded in Zendejas's new evidence occurred subsequent to this time period. Thus, the new evidence does not relate to the time period for which benefits were denied. The district court may not consider the new evidence because it is not material.

**Whether Zendejas is disabled due to fibromyalgia**. The record contains an opinion by Zendejas's treating physician—Dr. David R. Wood—stating that Zendejas is disabled due to fibromyalgia and obsessive compulsive disorder.[43] The record also includes Dr. Wood's responses to a questionnaire from Zendejas's attorney, opining that due to fibromyalgia Zendejas is markedly limited in both hands in grasping, turning, and twisting objects.[44] The ALJ rejected these opinions because the opinions are not supported by medically acceptable clinical or diagnostic data.[45] Zendejas complains that the ALJ erred by rejecting these opinions and by failing to determine that her fibromyalgia is a severe impairment. She maintains the ALJ made only a cursory examination of her medical record in regard to fibromyalgia.

The ALJ must ordinarily give a treating physician's opinion considerable weight in determining whether a person is disabled, but the ALJ may reject the opinion of a physician when the evidence supports a contrary conclusion.[46] The ALJ may assign little or no weight to a treating physician's opinion when the opinion is conclusory, unsupported by medically

---

[43]*Id*. at p. 178.

[44]*Id*. at p. 412.

[45]*Id*. at p. 17.

[46]*See Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).

9

acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence.[47] The difference in applying this standard to fibromyalgia as compared to other medical conditions is that "[t]here are no objective tests which can conclusively confirm the disease."[48] Fibromyalgia or fibrositis is a "nonarticular (not affecting joints) rheumatic disease[] . . . characterized by dull and persistent pain, tenderness, and stiffness of (1) muscles, (2) regions where tendons are inserted into bones, and (3) nearby soft tissues."[49] "There are no tests and no combination of symptoms and signs that signify without doubt that a patient has [fibromyalgia]. Rather, a thorough inquiry into how the symptoms developed and a comprehensive physical examination will, in most cases, reveal a pattern of findings that is suggestive of the condition."[50] Instead of conclusively establishing the presence of fibromyalgia, objective tests are used to rule out other possible explanations for the patient's problems.[51] For example, a physician may refer a patient to a rheumatologist to rule out arthritis. The rheumatologist then uses the results of antibody tests and a measure of the patient's rheumatoid factor to identify the presence of

---

[47]*See Newton*, 209 F.3d at 456.

[48]*Preston v. Sec. of Health & Human Services*, 854 F.2d 815, 818 (6th Cir. 1988). *See Ward v. Apfel*, 65 F. Supp.2d 1208, 1213 (D. Kan. 1999) ("The symptoms of fibromyalgia are entirely subjective, and there are no laboratory tests to identify its presence or severity."). *See also Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) (noting the difficulty in determining the severity of the claimant's fibromyalgia because of the unavailability of objective clinical tests).

[49]J.E. Schmidt, M.D., Attorney Dictionary of Med. 2-F 1790 (Matthew Bender 2005), *available on* Lexis.

[50]6 Attorneys' Textbook of Med. (3d ed. Matthew Bender) 25.30, *available on* Lexis.

[51]*See* Lee R. Russ, Bruce F. Freeman & Stanley McQuade, Attorneys Med. Advisor § 70:33, *available on* Westlaw; 6 Attorneys' Textbook of Med. (3d ed. Matthew Bender) 25.30, *available on* Lexis ("A number of laboratory tests are used not so much to rule in [fibromyalgia], but to rule out certain conditions that resemble [fibromyalgia] clinically.").

rheumatoid arthritis. Ruling out rheumatoid arthritis as a cause of the patient's problems is part of reaching a diagnosis of fibromyalgia.

Despite the unavailability of a conclusive test, the American College of Rheumatology (ACR) has developed a set of diagnostic criteria that has helped standardize the diagnosis of fibromyalgia.[52] "The major components of successful diagnosis are the symptoms of pain and stiffness, presence and location of the "tender" points . . . that are the only characteristic physical finding, chronicity, and absence of another disorder to explain the symptoms."[53] Zendejas's medical record reflects little more than a diagnosis. With the exception of periodic observations

---

[52] 6 Attorneys' Textbook of Med. (3d ed. Matthew Bender) 25.30, *available on* Lexis. The ACR criteria for the classification of fibromyalgia follows:

> IF: History: Three months widespread pain defined as pain on the right and left sides of the body (including shoulder and buttock pain) and above and below the waist and including the axial skeleton (cervical spine, anterior chest, thoracic spine, or low back) (grade of recommendation: C);
>
> THEN: Physical examination: Complaint of pain rated as 2/10 (0 no pain, 10 worst pain) upon palpation with enough pressure to whiten fingernail in 11 of 18 sites as [identified as tender points] (grade of recommendation: C);
>
> THEN: Fibromyalgia diagnosed (grade of recommendation: C);
>
> THEN: Additional history and examination: Consider other causes of diffuse myalgia, such as medication-induced myalgias, hypothyroidism, osteomalacia, and connective tissue disease (grade of recommendation: D);
>
> THEN: Testing: Thyroid-stimulating hormone (grade of recommendation: C), 25-hydroxyvitamin D (grade of recommendation: D), and ESR (grade of recommendation: D), with any additional targeted testing (grade of recommendation: D).

*Id*.

[53] *See* Lee R. Russ, Bruce F. Freeman & Stanley McQuade, Attorneys Med. Advisor § 70:33, *available on* Westlaw.

about tender points,[54] Zendejas's medical record does not reflect "a process of diagnosis by exclusion and testing of certain 'focal tender points' on the body for acute tenderness which is characteristic in fibrositis patients."[55]  Although medical instruments exist to establish the severity of a patient's fibromyalgia,[56] Zendejas's medical records do not address the severity of her symptoms.  Instead of using available instruments to establish severity, Dr. Wood concluded that Zendejas is disabled, but that conclusion is a legal determination reserved for the Commissioner.[57]

---

[54]SSA record, pp. 638 (Apr. 26, 2004); 639 (Jun. 15, 2004), 641 (Sep. 16, 2004), 642 (Nov. 3, 2004), 644 (Jan. 10, 2005), 646 (Apr. 13, 2005), 650 (Aug. 22, 2005), 126 (Jan. 4, 2007), 123 (Mar. 5, 2007), 122 (May 14, 2007).

[55]*Preston*, 854 F.2d at 818.

[56]Medical instruments exist to establish the severity of a patient's symptoms of fibromyalgia, but Zendejas's medical record indicates those instruments haven't been used to establish the severity Zendejas's fibromyalgia.

> At least three instruments have been used to establish the severity of FM symptoms at the time a patient is first seen, and subsequently to document whether a patient is improving spontaneously or in connection with treatment. (1) The Arthritis Impact Measurement Scales are a means of checking the severity of symptoms specific to a particular arthritic condition such as fibromyalgia. The test also attempts to outline in what ways and how seriously the patient is limited in daily activities and at work. (2) The Fibromyalgia Impact Questionnaire uses 10 questions to evaluate physical functioning, degree of pain, depression, anxiety, fatigue, and stiffness. Difficulty at work and general well-being also are quantified.  (3) The Quality of Life (QOL) Scale is a 16-item test designed to learn how rheumatic diseases and other chronic conditions affect patients' daily lives. When compared with patients having rheumatoid arthritis or osteoarthritis (the common form of chronic joint degeneration), those with fibromyalgia have scored consistently low in all areas of quality of life.

6 Attorneys' Textbook of Medicine 25.50 (3d ed. Matthew Bender), *available on* Lexis.

[57]*See Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) ("Among the opinions by treating doctors that have no special significance are determinations that an applicant is 'disabled' or 'unable

The ALJ wasn't required to accept Dr. Wood's conclusion about the disabling nature of Zendejas's fibromyalgia, but the ALJ explained why the opinion is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence. The ALJ's explanation follows:

> Although a treating source, David Wood, M.D., indicates on a Medical Release/Physician's Statement dated April 26, 2005, that the claimant is permanently disabled due to fibromyalgia and obsessive compulsive disorder, this statement is conclusory with no link to specific clinical signs and findings. Dr. Wood indicated that the claimant would have marked limitations in grasping and reaching, but he did not indicate this was related to carpal tunnel syndrome. He specifically noted that the claimant's grasping and reaching would be due to "exacerbation of fibromyalgia pain and arthritis." However, the diagnosis of fibromyalgia does not appear to be well supported as the documentation does not include the number of tender points in the exam that were tested positive during the relevant time period, nor is there a diagnosis by a rheumatologist or referral to a specialist. There is a conclusory statement on a Multiple Impairment Questionnaire indicating "fibromyalgia multiple tender points." The consultative examiner's exam revealed normal range of motion in the neck, and normal muscle mass and strength in the upper extremities. This seems to be in contrast to Dr. Wood's indication that the claimant would have marked limitations in grasping and reaching.
>
> Since the treating physician's opinion is not supported by medically acceptable clinical or diagnostic data, his opinion is not entitled to substantial weight. The opinion by the State agency is more consistent with the record as a whole. Moreover, Dr. Wood's conclusory opinion is inconsistent with the record as a whole, including specifically the opinions of the consultative examiner and the impartial medical examiner who testified at the hearing. It is also noted that "disability" is a medical–vocational opinion[], and there is no indicat[ion] that Dr. Wood is qualified to opine on the latter component, which at any rate is an assessment reserved to the Commissioner.[58]

This explanation is supported by the record. Dr. Wood's treatment notes contain many

---

to work.' These determinations are legal conclusions that the regulation describes as 'reserved to the Commissioner.'").

[58]SSA record, pp. 16-17.

references to fibromyalgia and/or fibrositis, but those records are remarkable for the absence of comments about disabling effect. The ALJ correctly observed that Dr. Wood's treatment records established no link to specific clinical signs and findings—Dr. Wood did not use the ACR's criteria diagnosing fibromyalgia. Despite treatment notes documenting a diagnosis of "fibromyalgia," Dr. Wood never indicated that the fibromyalgia prevents Zendejas from performing the daily activities of life. Nothing in Dr. Wood's treatment record supports his opinion about the disabling nature of Zendejas's fibromyalgia.

The only evidence suggesting that Zendejas's fibromyalgia has a disabling effect is Zendejas's own assertions. During her hearing, Zendejas testified that she has fibromyalgia in her shoulders, back, hips, legs, knees, ankles and feet"[59] and that fibromyalgia prevents her from working. She stated that she "can't sit, walk or stand without having pain throughout her body."[60] The ALJ found these assertions to be not entirely credible. Explaining why, the ALJ wrote the following:

> The claimant alleges back pain, ankle pain and other joint pain, but the record indicates only "early" and 'mild' degenerative changes in both her cervical and lumbar spine, as well as normal left ankle xray. The exam of her ankle revealed no swelling and no deformity. Another xray indicated no acute abnormalities with "minimal" osteophytes at L1-2 and L-2-3. The claimant has been receiving treatment for her SI joint in the form of injections.[61]

Although the ALJ did not specifically find that Zendejas was severely impaired by fibromyalgia, he recognized the effects of the pain and tenderness that Zendejas complained about.

---

[59]SSA record, p. 718.

[60]*Id*.

[61]*Id*. at p. 16.

"A different disorder called 'myofascial pain syndrome' can easily be confused with fibromyalgia, but produces a more localized pain, and often has objective physical findings."[62] Myofascial pain syndrome is the "[i]rritation of the muscles and fasciae (membranes) of the back and neck causing chronic pain (without evidence of nerve or muscle disease)."[63]

> Research on [fibromyalgia] can be quite confusing, since not only is fibrositis used to describe unrelated disorders, but medical commentators are not in agreement on basic aspects of the disorder. They question whether it is itself a form of myofascial pain or whether it must be differentiated from myofascial pain.[64]

"Myofascial pain is now considered the most common source of musculoskeletal pain by some authors, although others continue to question its very existence, and whether there is any difference between it and fibrositis."[65] Whatever the relationship between the disorders, the ALJ included "myofascial pain" in the list of Zendejas's severe impairments. The ALJ's discussion of the medical evidence shows that the ALJ carefully examined the medical record in regard to

---

[62]Dan J. Tennenhouse, Attorneys Med. Deskbook § 24:16 (4th ed.), *available on* Westlaw.

[63]J.E. Schmidt, M.D., Attorney Dictionary of Med. 4-M 7180 (Matthew Bender 2005), *available on* Lexis.

[64]Lee R. Russ, Bruce F. Freeman & Stanley McQuade, Attorneys Med. Advisor § 70:31, *available on* Westlaw. *See* Dan J. Tennenhouse, Attorneys Med. Deskbook § 24:16 (4th ed.), *available on* Westlaw (stating that disagreement exists amongst physicians about whether fibromyalgia exists).

[65]Lee R. Russ, Bruce F. Freeman & Stanley McQuade, Attorneys Med. Advisor § 74:44, *available on* Westlaw. *See* 6 Attorneys' Textbook of Med. (3d ed. Matthew Bender) 25.00, *available on* Lexis ("Fibromyalgia also has been termed primary fibromyalgia syndrome and generalized myofascial syndrome. Both these terms point to involvement of fibrous and muscular tissues. The myofascial pain syndromes certainly are closely related to [fibromyalgia], and these terms have been used interchangeably. Some authorities, however, distinguish between [fibromyalgia] and what is called myofascial pain dysfunction syndrome.").

fibromyalgia.⁶⁶ The ALJ was not required to give Dr. Wood's opinion controlling weight because the opinion is conclusory and is not supported by medically acceptable clinical or diagnostic data.

**Whether the ALJ erred in considering Zendejas's obesity**. Zendejas also complains that the ALJ failed to apply the commissioner's guidelines in evaluating the severity of her obesity.⁶⁷ Zendejas suggests that the SSA's obesity regulation required the ALJ to separately and expressly address the impact of obesity on her ability to work.

The SSA's regulation on obesity discusses the impact of obesity on a claimant's ability to work as follows:

> Obesity can cause limitation of function. The functions likely to be limited depend on many factors, including where the excess weight is carried. An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It may also affect ability to do postural functions, such as climbing, balance, stooping, and crouching. The ability to manipulate may be affected by the presence of adipose (fatty) tissue in the hands and fingers. The ability to tolerate extreme heat, humidity, or hazards may also be affected.
>
> The effects of obesity may not be obvious. For example, some people with obesity also have sleep apnea. This can lead to drowsiness and lack of mental clarity during the day. Obesity may also affect an individual's social functioning.⁶⁸

The regulation requires the ALJ to assess "the effect obesity has upon the individual's ability to

---

⁶⁶SSA record, p. 15.

⁶⁷Zendejas stated her argument in terms of SSR 00-3p, but that regulation was superceded by SSR 02-1p. The report and recommendation considers Zendejas's argument using the superceding regulation.

⁶⁸SSR 02-1p: Policy Interpretation Ruling Titles II and XVI: Evaluation of Obesity ¶ 8.

16

perform routine movement and necessary physical activity within the work environment."[69] The regulation, however, does not require the ALJ to discuss the impact of a claimant's obesity apart from the claimant's other impairments. Instead, the regulations require the ALJ to "assess and make a finding about [the person's] residual functional capacity based on all the relevant medical and other evidence in [her] case record."[70] Requiring a separate and express discussion would contradict the SSA's guidance about obesity because "[o]besity is a risk factor that increases an individual's chances of developing impairments in most body systems"[71] and because "the combined effects of obesity with other impairments may be greater than might be expected without obesity."[72] Here, the ALJ determined that obesity was a severe impairment, along with sacroiliitis, myofascial pain, restless leg syndrome, obstructive sleep apnea, anxiety disorder NOS, depressive disorder NOS, and dependent personality disorder NOS. The ALJ assessed Zendejas's residual functional capacity considering the impairments and made a finding that limited Zendejas to sedentary work. This determination is consistent with the physical residual functional assessment prepared by Dr. Bob Dodd,[73] as well as Zendejas's statement that she experienced no specific complications of her obesity to her knowledge.[74] The ALJ did not err in

---

[69]*Id*.

[70]20 C.F.R. § 404.1520(e) (discussing considerations that apply when the claimant's impairment(s) does not meet or equal a listed impairment).

[71]SSR 02-1p: Policy Interpretation Ruling Titles II and XVI: Evaluation of Obesity ¶ 2.

[72]*Id*. at ¶ 8.

[73]SSA record, p. 493.

[74]*Id*. at p. 506.

assessing Zendejas's obesity.

**Whether substantial evidence supports the ALJ's conclusion**. The ALJ determined in step 4 that Zendejas can perform her past relevant work as a clerk typist. The following substantial evidence supports that determination: (1) Dr. Fermin Sarabia's clinical interview/mental status evaluation, determining that Zendejas can perform all activities of daily living without assistance and assessing Zendejas's concentration, persistence and pace as within normal limits;[75] (2) the results of a psychiatric review technique by Dr. Stephanie Judice;[76] (3) the physical residual functional capacity assessment by Dr. Bob Dodd, opining that Zendejas is limited in lifting, standing, and walking, but not from sitting;[77] (4) testimony by Dr. Betty Feir,

---

[75]SSA record, pp. 509-11.

[76]*Id.* at pp. 479-92. Dr. Judice determined that Zendejas has the following limitations: (1) not significantly limited in the ability to remember locations and work-like procedures; ability to understand and remember detailed instructions; the ability to carry out very short and simple instructions; the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerances; the ability to sustain an ordinary routine without special supervision; the ability to sustain an ordinary routine without special supervision; the ability to work in coordination with or proximity to others without being distracted; the ability to make simple work-related decisions; (2) moderately limited in the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (3) not significantly limited in the ability to interact appropriately with the general public; the ability to accept instructions and respond appropriately to criticism from supervisors; the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; the ability to respond appropriately to changes in the work setting; the ability to be aware of normal hazards and take precautions; the ability to travel to unfamiliar places or use public transportation; and (4) moderately limited in the ability to ask simple questions or request assistance; the ability to set realistic goals or make plans independently of others. *Id.* at pp. 501-03.

[77]Dr. Dodd determined that Zendejas can: (1) occasionally lift and/or carry 10 pounds; (2) frequently lift and/or carry less than 10 pounds; (3) stand/walk less than about 6 hours in an 8-hour

18

explaining that Zendejas's ability to tolerate stress would prevent her from working in sales or with a large crowd of people;[78] and (5) testimony by a vocational expert that a person with Zendejas's limitations would still be able to perform Zendejas's past job as a clerk-typist for an elementary school.[79] The ALJ's determination that Zendejas is not disabled as defined by the Act is supported by substantial evidence. The ALJ's decision comports with relevant legal standards.

## Recommendation

Because the ALJ made no error of law and because substantial evidence supports the ALJ's determinations, I recommend DENYING Zendejas request for relief (docket entry # 3) and AFFIRMING the Commissioner's decision.

## Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this memorandum and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this memorandum and recommendation must be filed within 10 days after being served with a copy of same, unless this time period is modified by the district court.[80] **Such party shall file the objections with the**

---

day; (4) sit less than about 6 hours in an 8-hour day; and (5) is unlimited in push and/or pull except as indicated for lift and/or carry. Dr. Dodd determined Zendejas had no postural limitations, manipulative limitations, visual limitations, communicative limitations, or environmental limitations. *Id.* at pp. 493-500.

[78]*Id.* at p. 725.

[79]*Id.* at p. 728.

[80]28 U.S.C. §636(b)(1); FED. R. CIV. P. 72(b).

**clerk of the court, and serve the objections on all other parties and the magistrate judge.**

A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[81] Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this memorandum and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.[82]

    **SIGNED** on June 29, 2009.

 

*[signature: Nancy Stein Nowak]*
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[81] *Thomas v. Arn*, 474 U.S. 140, 149-152 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).

[82] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).